IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

BRENDA SHIRLEY BALDWIN,
Administratrix of the Estate of
BARBARA K. CREEL,

        Plaintiff,

V.                            CIVIL ACTION NO. 3:07-0078

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

**MEMORANDUM ORDER**

In this action, filed under the provisions of 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying decedent Barbara Creel's[1] applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Ms. Creel protectively filed her applications on July 15, 2003, alleging disability commencing October 20, 2000,[2] as a consequence of a bad back and broken ankle injury. On appeal

---

[1] Barbara Creel, the claimant and original plaintiff in this case, died on September 21, 2008. Thereafter, Brenda S. Baldwin was substituted as plaintiff.

[2] Plaintiff's insured status expired on December 31, 2004 and, for purposes of her application for disability insurance benefits, it was incumbant upon her to establish disability on or before that date. Harrah v. Richardson, 446 F.2d 1,2 (4th Cir. 1971).

from initial and reconsidered denials, an administrative law judge, after hearing, found her not disabled, in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, she filed a civil action seeking review of the Commissioner's decision.

At the time of the administrative decision, Ms. Creel was fifty-two years of age and had obtained a high school education, plus one year of college. Her past relevant employment experience consisted of work as an accounting assistant and secretary/receptionist. In his decision, the administrative law judge found that she suffered from lumbar scoliosis and a history of right ankle fracture with residual pain, impairments which he considered severe. Concluding that Ms. Creel had the residual functional capacity for a limited range of sedentary level work and that her past work was not precluded by these limitations, the administrative law judge found her not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Ms. Creel testified that she left her position as accounting assistant after twenty-three years because the hospital where she worked was offering an early retirement program, and she felt like it was time to leave. She then worked as a secretary for nearly three years and left this job because her boss was involved in a murder-suicide and she was uncomfortable continuing to work there.[3]

Ms. Creel testified her most limiting problems were back and feet pain. Her back hurts in different places on different days, and the pain does not radiate. She does not know what causes the pain or what makes it worse. The ankle pain, residual from a past fracture, is constant and feels like it is stiff. It only sometimes affects her ability to walk. Her foot problems are related to numbness

---

[3] Although these events occurred in April, Ms. Creel continued to work until October.

which has spread throughout the feet and part of the way up her legs. Lortab helps her pain, and Neurontin helps her rest but does not decrease her lower extremity numbness.

The medical evidence reflects treatment for conditions related to alcoholism; hypertension, variably controlled; gastroesophageal reflux disease; back pain; right ankle pain; lower extremity numbness; and anxiety and depression. While COPD was established by chest x-ray, it is not clear that any treatment has been necessary. Ms. Creel did, however, continue to smoke at least one and one-half packs per day.

The administrative law judge, relying on an assessment of residual functional capacity completed by Dr. Timothy Frei, who reviewed the record and provided an expert medical opinion, found Ms. Creel limited to sedentary level work requiring no more than four hours of standing and walking per day, thirty minutes to one hour at a time; sitting no more than six hours per day, thirty minutes to one hour at a time; no crouching, kneeling or crawling; only occasional climbing, balancing and stooping; occasional pushing and pulling to the sedentary weight limits; and avoidance of heights, moving machinery and vibration. The administrative law judge found that, even with these limitations, the claimant could still perform her past work.[4]

Ms. Creel alleged first that the administrative law judge erred in not adopting the opinion of her treating physician, Dr. Morgan, reflected in a residual functional capacity assessment dated March 29, 2005. The administrative law judge noted several reasons he did not give this opinion significant weight, but the claimant focuses primarily on his conclusion that she completed this form

---

[4]The administrative law judge erroneously noted in his decision that claimant could perform her past work as a secretary and accounting assistant, both as she performed these jobs, and as they are generally performed in the national economy. Due to some of the weights she lifted in these two jobs, it was the vocational expert's opinion she could perform them only as they are performed in the national economy.

3

for Dr. Morgan's signature. He believed the handwriting on the form matched that of Ms. Creel in the forms she completed during review of her claim. While it is apparent from the form that it was not filled out by Dr. Morgan,[5] the Court agrees that it is beyond the administrative law judge's authority to draw such a conclusion. That alone does not invalidate his determination as to the weight given Dr. Morgan's assessment, however. The administrative law judge also observed that there were no objective findings set out in support of Dr. Morgan's opinions and that his assessment appeared to be based on Ms. Creel's subjective complaints.

Claimant's reliance on "the treating physician rule" as support for her argument that Dr. Morgan's opinions should have been given controlling weight is misplaced as the regulations at 20 C.F.R. §§ 404.1527(d), 416.927(d), promulgated in 1991, superseded this rule.[6] While these regulations give more weight to a treating physician's opinion, they also provide that such opinions will be given controlling weight only if supported by clinical and laboratory diagnostic techniques and if they are not inconsistent with the other substantial evidence in the record.[7] In this case, neither of these criteria is met.

With regard to Ms. Creel's chronic back pain, a December 15, 2003 x-ray performed pursuant to the consultative physical exam of Dr. Wilfredo Molano was interpreted as showing moderate

---

[5]The Court observes that Dr. Morgan's signature on this form is illegible as are portions of his treatment notes. The person completing the assessment on his behalf printed his name below the signature line but, oddly, spelled his first name wrong.

[6]See Winford v. Chater, 917 F.Supp. 398, 400 (E.D. Va. 1996), citing Shrewsbury v. Chater, 1995 WL 592236 at *9 n.5 (4th Cir. 1995) (unpublished).

[7]20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Ward v. Chater, 924 F.Supp. 53, 55-56 (W.D. Va. 1996); Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

scoliosis in the lumbar spine;[8] however, Dr. Morgan's reports consistently reflect no abnormalities on clinical exam. Dr. Molano found plaintiff had full range of motion in the lumbar spine, negative straight leg raising, an ability to squat all the way to the floor and to walk on the heels and toes as well as in tandem. Further, Ms. Creel reported to this examiner that she was able to do her housekeeping, grocery shopping, even yard work, despite back pain and ankle pain. She also described her pain as dull and achy, and Dr. Morgan never treated her pain with anything other than medication. The administrative law judge found the back problems "severe" and generously limited claimant to a restricted range of sedentary work; however, it is apparent that the evidence does not support Dr. Morgan's extremely limited assessment of her work-related limitations.

In terms of numbness and tingling in claimant's hands, she testified at the second hearing that she mainly experiences cramping when trying to open things or hold them for a long time and has numbness only in the tips of the fingers. Ms. Creel complained on multiple occasions of numbness in her feet, and her reports indicate she had begun to experience it in her lower legs as well. Despite these complaints, however, and Dr. Morgan's diagnosis of alcoholic neuropathy, again there is no documentation of any abnormal findings relative to the hands, grip strength, manipulative ability or ability to walk, etc. He also has not ordered further tests or attempted to obtain any objective evidence about hand or feet problems. Dr. Molano found no abnormalities in either of these areas, and none are apparent in findings from the claimant's hospitalizations.

Basically, there are complaints from claimant and a diagnosis by her treating physician, apparently based only on her reports. Without medical evidence, however, these do not even qualify

---

[8] After exam and, presumably, review of the x-ray results, Dr. Molano characterized plaintiff's scoliosis as only mild.

5

as impairments, which the regulations provide must result from anatomical, physiological, or psychological abnormalities "which can be shown by medically acceptable clinical and laboratory diagnostic techniques." A physical or mental impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [claimant's] statement of symptoms."[9] Obviously, only "medically determinable" impairments can be the basis of disability. The administrative law judge did mention Ms. Creel's complaints in this regard but made no specific credibility finding regarding them. In light of the factors discussed, however, it is apparent that this was harmless error[10] as claimant's allegations relative to these conditions neither establish a severe impairment nor help substantiate Dr. Morgan's residual functional capacity findings.

Claimant alleges arteriosclerotic heart disease ("ASHD") should have been determined to be a severe impairment, yet it is not clear where this diagnosis originated or what findings led to it. The Court can find no evidence tying it to any of plaintiff's alleged limitations. Ms. Creel's medical history includes ongoing treatment for hypertension and hyperlipidemia, but there are no findings which link these conditions to the diagnosis of heart disease. This diagnosis shows up for the first time in Dr. Morgan's November 17, 2004 treatment note, although there is no reference in the report to cardiac abnormalities. It is not consistently mentioned thereafter and is not reflected in any of the hospitalization summaries until January 10, 2005, although there are no cardiac findings other than

---

[9] 20 C.F.R. §§ 404.1508, 416.908.

[10] See, Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (affirming decision despite error "because there is no question but that [the administrative law judge] would have reached the same result notwithstanding his initial error []").

6

an EKG classified as abnormal.[11] Other abnormal findings or support for this diagnosis are not apparent from the record. Again, there is no evidence of any limitations arising from this condition, if it is present.

Claimant had a long history of heavy cigarette smoking with reports indicating she smoked at least one and one-half packs per day. Chest x-rays in the record have been interpreted as showing COPD, although there are few clinical observations of pulmonary abnormalities, and it does not appear Dr. Morgan prescribed medication, at least not on a regular basis. Further, pulmonary function testing on February 2, 2006 was consistent with only "borderline" obstruction. After considering these factors, the administrative law judge concluded this impairment was not severe, and the subsequent evidence in the record supports his conclusion.

Likewise, the administrative law judge considered that Ms. Creel had received medication for anxiety and depression but concluded that there had not been objective findings of mental distress absent the use of alcohol. He noted treatment records documented complaints only of "general nervousness and insomnia since the claimant states she stopped regularly consuming alcohol." Dr. Morgan's reports contain diagnoses of depression, anxiety or both on many occasions, but he did not make any findings relative to either condition and only prescribed medication to treat them without referring claimant for counseling or indicating she needed such. In light of this, the Court concludes that the administrative law judge's determination that Ms. Creel experienced no more than mild limitation of activities of daily living, social functioning and maintaining concentration,

---

[11]The "Review of Systems" portion of the admitting report, which was completed by Dr. Morgan, is significant in that it reflects claimant denied chest pain or palpitations, shortness of breath, edema, pain in the extremities or neurological deficits. Dr. Morgan notes she has a history of anxiety, adding it is "controlled with medication." Exam revealed no deficits in any of these areas, other than decreased breath sounds, and Dr. Morgan reported EKG findings were normal.

persistence and pace are supported by substantial evidence and support a finding of no severe mental impairment.

Finally, Ms. Creel alleges it was error for the administrative law judge not to find her allegations of cognitive limitations a severe impairment. While CT scans of the head on May 11, 1999 and August 9, 2001 reflect "mild" cortical and cerebellar atrophy and "mild" generalized volume loss, respectively, no significance has been attached to these findings by any treating or examining physician and there is no indication this is related to claimant's allegations of reduced cognitive functioning from Dr. Morgan or any other examiner. These allegations clearly do not form the basis for a severe impairment, despite Ms. Creel's assertions.

In light of the factors discussed above, it is apparent that the administrative law judge's decision to accord little weight to Dr. Morgan's extremely limited residual functional capacity assessment is supported by substantial evidence. Likewise, his determination as to which of claimant's many alleged impairments were severe has substantial support as do his findings as to Ms. Creel's residual functional capacity and ability to perform her past work. Because the administrative law judge presented to the vocational expert "proper" hypothetical questions which "fairly set out all of claimant's impairments,"[12] his testimony provides substantial support for the administrative law judge's conclusions relative to ability to perform past work as well as alternate employment.

Finally, the allegations raised by claimant that the administrative law judge made material misstatements is not persuasive. He may have made factual errors, but the Court can detect no intent

---

[12] Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989).

to misstate the evidence, and the errors noted are clearly not material. The Court, finding claimant's objections without merit, concludes that the Commissioner's decision must be affirmed.

On the basis of the foregoing, it is **ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted, and the decision of the Commissioner affirmed. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER: August 18, 2009

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE